PEOPLE v LENKEVICH

Docket No. 54816. Argued December 10, 1974 (Calendar No. 2).—
Decided May 27, 1975.

Emilia Lenkevich was convicted by a jury in Recorder's Court of
Detroit, Frank G. Schemanske, J., of the second-degree murder
of her husband in an altercation in their home. The judge
instructed the jury that to justify the taking of a human life in
self-defense they must find that there must have been no way
open whereby defendant could have retreated, as it appeared to
her at the time, to a place of safety and thus avoid the conflict.
The Court of Appeals, Quinn, P. J., and V. J. Brennan and
O'Hara, JJ., affirmed (Docket No. 12275). Defendant appeals.
*Held:*

1. The instruction given on self-defense is improper in a
situation where both the person assailed and the assailant have
equal rights, within limits, to stand their ground.

2. Both the defendant and her husband had a right to be at
the site of the attack, their home, and the defendant had no
duty to retreat to the wall or flee the home before defending
herself, but she was obliged to use only so much force and
employ the means necessary under the circumstances to pre-
vent the harm as she perceived it to be.

3. An erroneous instruction on a material matter that is not
corrected or cured in the charge is prejudicial, and the error in
this case was not harmless.

Reversed and remanded for a new trial.

1. HOMICIDE—MURDER—SELF-DEFENSE—INSTRUCTIONS TO JURY.

Instructing the jury that to justify the taking of a human life in
self-defense there must have been no way open whereby defend-
ant wife could have retreated, as it appeared to her at the time,

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 5] 40 Am Jur 2d, Homicide §§ 154, 496, 519–521.
[2, 3, 5] 40 Am Jur 2d, Homicide §§ 167, 168.
   Homicide, extent of premises which may be defended without
   retreat under right of self-defense. 52 ALR2d 1458.
[4] 75 Am Jur 2d, Trial § 604 *et seq.*
[5] 40 Am Jur 2d, Homicide §§ 480, 574.

to a place of safety and thus avoid the conflict, was prejudicial error in a prosecution for murder arising out of an altercation between a husband and wife in their own home in which the husband was killed.

2. CRIMINAL LAW—SELF-DEFENSE—HOME—RETREAT.

When an attack occurs in the home of the person attacked by an assailant who is not an intruder but who has a right to be on the premises, the person attacked who is without fault need not retreat to the wall before defending herself.

3. HOMICIDE—SELF-DEFENSE—INSTRUCTIONS TO JURY—HOME—RETREAT.

Instructions to the jury that there must have been no way whereby defendant wife could have retreated, as it appeared to her at the time of the stabbing of her husband, to a place of safety and thus avoid the conflict was improper in a situation where both the assailed and the assailant had an equal right, within limits, to stand their ground; the defendant wife had no duty to retreat to the wall or flee the home before defending herself where both she and her husband had the right to be at the site of the attack, their home.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—PREJUDICE.

The rule is well settled that if an erroneous instruction is given on a material matter and the error is not corrected or cured in the charge such error must be regarded as prejudicial.

5. HOMICIDE—SELF-DEFENSE.

A wife was not obliged to flee from her own house, but she was obliged to use only so much force and employ such means necessary under the circumstances to prevent the harm as she perceived it to be where an altercation occurred between husband and wife in their own home in which the husband was killed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Jaffe, Snider, Raitt, Garratt & Heuer* (by *F. Thomas Lewand),* for defendant on appeal.

M. S. COLEMAN, J. The principal issue arises from a plea of self-defense after an altercation between husband and wife in their own home during which the husband was killed. We are asked to determine whether the judge prejudicially erred in instructing the jurors that to justify the taking of a human life in self-defense they must find

"that there must have been no way open whereby she could have retreated, as it appeared to her at the time of the stabbing to a place of safety and thus avoid the conflict."

The Court of Appeals affirmed defendant's conviction but there is a split of authority in that Court.[1]

We reverse the Court of Appeals and remand for a new trial.

### 1.

The parties are in basic agreement as to the pertinent facts stated by defendant—the only eye-witness to the killing.

On August 20, 1970, defendant had gone into the kitchen to prepare a salad for dinner and was standing at the sink when she heard a noise. She turned around and saw the deceased with a knife in his hand as he said, "You are not going to get a divorce. * * * I'll kill you first." (There had been serious and violent marital troubles.) Defendant had no weapon in her hand but she grabbed her husband's hand and struggled to get the knife away. Both kitchen doors were locked. She next found herself in the adjoining dining room where

---

[1] Compare *People v Paxton,* 47 Mich App 144; 209 NW2d 251 (1973), which reached a result opposite to that reached in this case.

her husband was slamming her against the door into the bedroom. Defendant testified that the deceased then grabbed her by the throat and that she took both hands and grabbed him and hung on with all her strength, but that he still held the knife in his right hand. Next she felt herself falling forward, and felt a sudden release. She tried to push herself up and felt something wet and warm on her hands, looked down and saw the knife. Deceased died of a knife wound in the general area of the heart. Defendant pled accident or self-defense.

At the close of the trial the judge instructed the jury on self-defense:

"Self-defense in proper cases, is the right of every person, but it will not justify a taking of a human life unless the jurors shall be satisfied from the testimony; first, that the defendant was not the aggressor in bringing on the difficulty. That is, that she was without fault. Second, that there existed at the time of the stabbing in her mind a present and impending necessity to stab in order to save herself from the death or great bodily harm. And, third, that there must have been no way open whereby she could have retreated, as it appeared to her at the time of the stabbing to a place of safety and thus avoid the conflict.

"Unless you find all of the three of these facts are established in this case, then the plea of self-defense fails."

Defendant was found guilty of second-degree murder. She was sentenced to life imprisonment.

2.

We hold that when an attack occurs in one's home by an assailant who is not an intruder but who has a right to be on the premises, an assailed

who is without fault need not "retreat to the wall" before defending herself. In other words, the given instruction is improper in a situation where both the assailed and the assailant have an equal right, within limits, to stand their ground. In the instant case, both the defendant and her husband had a right to be at the site of the attack—their home. That being the case, the defendant had no duty to "retreat to the wall", or to flee the home, before defending herself. Any instruction that she had such a duty was incorrect.

This conclusion is in accord with *People v Stallworth,* 364 Mich 528; 111 NW2d 742 (1961). There Justice EDWARDS, speaking on behalf of the Court, said:

"Self-defense, however, requires a showing that the defendant had done 'all which is reasonably in his power to avoid the necessity of extreme resistance, by retreating where retreat is safe.' *Pond v People,* 8 Mich 150, 176 [1860]. But, as Mr. Justice CAMPBELL put it in the *Pond Case,* p 177, 'a man is not * * * obliged to retreat if assaulted in his dwelling.'" 364 Mich 535.

While we recognize that there is a split of authority throughout the country in the applicability of the duty to retreat when the assailant and the assailed share the same living quarters, we agree with the reasoning of Judge Cardozo in *People v Tomlins,* 213 NY 240, 243–244; 107 NE 496; Ann Cas 1916c, 916 (1914).

In *Tomlins,* Judge Cardozo reasoned:

"It is not now, and never has been the law that a man assailed in his own dwelling, is bound to retreat. If assailed there, he may stand his ground, and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home. * * * The rule is the same whether the attack proceeds from some

other occupant or from an intruder. It was so adjudged in *Jones v State* [1884] (76 Ala 8, 14). 'Why,' it was there inquired, 'should one retreat from his own house, when assailed by a partner or co-tenant, any more than when assailed by a stranger who is lawfully upon the premises? Whither shall he flee, and how far, and when may he be permitted to return?' "

This characterization accurately depicts the exception to the general duty of one to retreat before "self-defense" attaches as a valid defense. In the instant case, the trial judge stated the general rule without the pertinent exception.

But even so, argues the prosecutor, the error is "harmless". There were no witnesses to the struggle. The defendant's version was the only one excepting the prosecutor's theory presented to the jury. If the jury had believed the defendant, then the "retreat to the wall" instruction was harmless for the defendant contended that she had no opportunity to retreat, the prosecutor argues. However, the jury did not believe the defendant. They found her guilty.

Furthermore, says the prosecutor, defendant never contended that she deliberately stabbed her husband. Rather, as she fell forward after her husband grabbed her throat, her husband was inadvertently stabbed. So where is the prejudice to the defendant? Furthermore, continues the prosecutor, there was no request by the defense for any particular instruction. In fact, defense counsel expressed satisfaction with the instruction given at trial. Only after the verdict did the defense decide that they did not like the instruction after all.

However, in *People v Kanar*, 314 Mich 242, 253; 22 NW2d 359 (1946), this Court stated:[2]

---

[2] To the same effect *see People v DeWitt*, 233 Mich 222; 206 NW 562 (1925); *People v Eggleston*, 186 Mich 510; 152 NW 944 (1915);

"The rule is well settled in this State that if an erroneous instruction is given on a material matter and the error is not corrected or cured in the charge such error must be regarded as prejudicial."

In *People v Liggett*, 378 Mich 706, 714; 148 NW2d 784 (1967), a new trial was ordered when the people failed to demonstrate beyond a reasonable doubt that the trial judge's instructions did not contribute to the defendant's conviction.

Moreover, in *Liggett, supra,* this Court said:

"It is settled law of this State that the trial judge should instruct the jury in criminal cases as to general features of the case, define the offense and indicate that which is essential to prove to establish the offense, even in the absence of request. A case may be reversed because the charge omits a legally essential ingredient. *People v Prinz,* 148 Mich 307 [1907]; *People v Kanar,* 314 Mich 242, 254 [1946]; *People v Hearn,* 354 Mich 468 [1958]. Similarly, without a request, a case may be reversed because of an erroneous or misleading charge as opposed to one which merely omits a pertinent though not legally necessary point. *People v Mac-Pherson,* 323 Mich 438, 448 et seq. [1949]; *People v Guillett,* 342 Mich 1, 7 [1955]; *People v Oberstaedt,* 372 Mich 521, 526 [1964]. Defendant has a right to have a properly instructed jury pass upon the evidence. *People v Visel,* 275 Mich 77, 81 [1936]."

In *People v Paxton,* 47 Mich App 144,149; 209 NW2d 251 (1973), Judge McGREGOR had this to say:

"Testimony at trial indicated some conflict as to whether or not the defendant was acting to protect herself, or, on the contrary, shot the victim in absence

*Silverstone v London Assurance Corp,* 176 Mich 525; 142 NW 776 (1913); and *People v McGrandy,* 9 Mich App 187; 156 NW2d 48; 26 ALR3d 1292 (1967).

of any fear. Because of this question, the defendant had a right to rely on the defense of self-defense and its proper presentation to the jury. The trial court was in error in allowing the defendant to proceed on the wrong theory. The defendant was prejudiced by the fact that the entire trial was conducted under an erroneous belief that the retreat from danger in her own home was an element required to establish self-defense."

If in the presence of conflicting testimony the defendant had a right to rely on the defense of self-defense and its proper presentation to the jury, there is even more reason in the absence of conflicting testimony to afford the defendant such a right. A choice facing the jury in the absence of conflicting testimony is somewhat weighted and less flexible than one with conflicting testimony presenting in most cases a choice between two reasonable alternatives. If a defendant is prejudiced by erroneous instruction when a jury is faced with reasonable alternatives, he or she is certainly prejudiced by an erroneous instruction when a jury faces a weighted choice.

CONCLUSION

Defendant was not required to flee if attacked by anyone in her own home. If attacked by an intruder, she need not have retreated. If attacked by a cotenant or other occupant, as here, defendant had the right to protect herself if the circumstances caused her reasonably to believe that there was a present and impending necessity so to act to prevent the infliction of death or great bodily harm. Defendant was not obliged to flee from her own house, but she was obliged to use only so much force and employ such means necessary under the circumstances to prevent the harm as she perceived it to be.

The other two issues raised by defendant are unlikely to be repeated upon a new trial and so are not addressed.

Reverse and remand for new trial.

T. G. KAVANAGH, C. J., and WILLIAMS, LEVIN, and J. W. FITZGERALD, JJ., concurred with M. S. COLEMAN, J.

SWAINSON, J., and the late Justice T. M. KAVANAGH took no part in the decision of this case.