361 So.2d 774 (1978)
Annie Mae CONNER, Appellant,
v.
STATE of Florida, Appellee.
No. 77-631.
District Court of Appeal of Florida, Fourth District.
July 19, 1978.
Rehearing Denied September 13, 1978.
*775 Richard L. Jorandby, Public Defender, and Marc E. Kirk, Asst. Public Defender, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
LETTS, Judge.
A mother, adjudged guilty of the manslaughter slaying of her son by use of a firearm, here appeals because the trial judge refused to give a jury instruction on "defense of home." We affirm.
The mother and her mentally defective son shared living quarters. At trial she claimed he "pushed her down," threatened to kill her and she did not intend the shot fired to strike him. The state presented evidence that the son was outside the house apologizing to his mother when the gun was discharged.
The jury was given a murder two instruction along with manslaughter, aggravated battery, aggravated assault, battery and assault. Instructions on justifiable and excusable homicide were also given, as was avoiding use of deadly force and finally retreat. However, the court refused to instruct on defense of home, because "both parties, according to the evidence, legally lived in the home and the court would rule [it] to be bad law to allow either party to stand and not retreat." We agree with the trial judge.
The defense of home instruction, here not given, reads in part as follows:
One unlawfully attacked in his own home or on his own premises has no duty to retreat and may lawfully stand his ground and meet force with force, including deadly force, if necessary to prevent imminent death or great bodily harm to himself or another, or to prevent the commission of a forcible felony. Fla.Stnd. Jury Instructions p. 64.
The retreat instruction which was given reads:
If attacked by another, even though the attack is wrongful, he has the legal duty to retreat if by doing so he can avoid the necessity of using deadly force without increasing his own danger, but a person placed in a position of imminent danger of death or great bodily harm to himself by the wrongful attack of another has no duty to retreat if to do so would increase his own danger of death or great bodily harm. (emphasis supplied) Fla.Stnd. Jury Instructions p. 64.
In the case at bar we hold this latter instruction quoted, to be sufficient to meet the ends of justice especially in view of the quotation above emphasized.
Almost every jurisdiction accepts the "castle doctrine," (see 26 A.L.R.3rd 1296, and 12 Wake Forest L.Rev. 1093), which is based on the premise that a man's home is his castle, where he may stand his ground and not retreat. As the nineteenth century case of Jones v. State, 76 Ala. 8 (1884) asked rhetorically: "whither shall be flee and how far, and when may he be permitted to return." In effect, he or she is already "at the wall."
Notwithstanding the foregoing, the rationale, of the "castle" doctrine appears to us to be in immediate trouble when it is expanded and applied among members of a family, all lawfully on the premises and all lawfully claiming the home as their ultimate sanctuary. See Watkins v. State, 197 So.2d 312 (Fla.4th DCA 1967). The castle doctrine is of ancient origin and "... in its original applications it doubtless had in view only attacks from external aggressors *776 ...." Watts v. State, 177 Ala. 24, 59 So. 270, 273 (1912). Nevertheless many jurisdictions have expanded it to permit its use when brother is against sister and mother against son. (See 26 A.L.R.3rd 1296). Regretfully one such court is our own and while no other Florida decision on the subject is recorded, we have twice so expanded the doctrine. See Watkins v. State, 197 So.2d 312 (Fla.4th DCA 1967) and Stevenson v. State, 285 So.2d 61 (Fla.4th DCA 1973).
From this expanded version of the castle doctrine we now recede, for it appears to us that, where both the antagonist and the assailed are legal occupants of the same "castle," neither one having the legal right to eject the other, the defense of home instruction need not be given.
We agree with a recent law review author, that human life is sacred and that due regard for it far outweighs any indignity or cowardice involved in having to retreat from one's own family.[1]
It is a matter of common knowledge that a majority of all homicides are committed by close relatives and friends, many of these killings occurring in the home. Edwards, Murder & Gun Control, 18 Wayne L.Rev. 1335 (1972). This being so, we cannot but agree with the dissent in Common-wealth v. Johnston, 438 Pa. 485, 490, 263 A.2d 376, 381 (Pa. 1970) wherein the judge remarked that he "would not adopt a rule of law which more easily justifies the taking of a human life." To us the saving of lives is the ultimate goal for law enforcement officers and the courts to achieve. Accordingly we see no reason why a mother should not retreat from her son, even in her own kitchen. Such a view does not render her defenseless against a member of her family gone berserk, because the instruction on retreat, first above quoted, concludes, "but a person placed in a position of imminent danger of death or great bodily harm to himself by the wrongful attack of another has no duty to retreat if to do so would increase his own danger of death or great bodily harm." With that instruction, we certainly have no quarrel and it was given in this case.
We find no merit in the other point on appeal.
AFFIRMED.
DAUKSCH, J., and BLACK, SUSAN, Associate Judge, concur.
NOTES
[1] Acknowledgment is made to Rachel V. Lee author of the note "A Further Erosion of the Retreat Rule in North Carolina," 12 Wake Forest L.Rev. 1093, for some of the material used in our opinion.